In re Sanitary and Improvement District No. 107 of Douglas County, Nebraska.
Thomas G. Zwink, appellee and cross-appellant, v. Wilfred Ahlman et al., appellants and cross-appellees, impleaded with William H. Elliott et al., appellees and cross-appellees.

128 N. W. 2d 121

Filed May 1, 1964. No. 35604.

Cropper & Cropper and John D. Melia, for appellants.

Stern, Harris & Feldman, for appellee Zwink.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

The plaintiff, Thomas G. Zwink, one of the owners of land set out in the articles of association of proposed Sanitary and Improvement District No. 107 of Douglas County, Nebraska, filed his petition with the original articles of association appended thereto in the district court for Douglas County praying the court find and decree that said district was duly organized and constitutes a sanitary and improvement district under sections 31-727 to 31-766, R. R. S. 1943, as amended.

The articles of association gave as the purpose of the proposed district: To establish, maintain, and construct a sewer and water system and to contract with any utilities district, municipality, or corporation for such installation; to provide water service for fire protection and to contract therefor; to dispose of waste and sewage in the district; and to install a system of public roads, streets, and highways and to contract for lighting the same.

Before the hearing Wilfred Ahlman, Irma Ahlman, Charles Ahlman, Clarence F. Reard, Bonnie Y. Reard, Harold E. Crosby, and Mildred F. Crosby appeared with others designating themselves as defendants and filed an answer, the contents of which so far as they are of significance to this opinion may be said to be: A denial of the proper organization and existence of the district; allegations that the majority of the landowners in the proposed district did not desire the same; the desires and objects of the district would work a hardship upon the answering defendants; and that no benefits would result to them.

The plaintiff and the defendants will be referred to as such in this opinion except where it is necessary to designate the defendants by name. The defendants of

the same surname respectively own certain real estate together and at times will be designated by their family name collectively. The proposed Sanitary and Improvement District No. 107 of Douglas County will be referred to as the district.

The trial court entered its judgment finding the district was organized according to law and declaring it to be a public corporation under sections 31-727 to 31-766, R. R. S. 1943, as amended.

The defendants' motion for a new trial having been overruled, those who are named have brought the matter to this court by appeal.

The errors assigned by the defendants to the judgment of the trial court are that it is contrary to law and not sustained by the evidence, and that there was an irregularity and abuse of discretion by the trial court in entering and thereafter amending its judgment contrary to law. The brief of the defendants particularizes their objections and relates them to three points, to wit: That the description of the boundaries of the district in the judgment of the court is so vague and uncertain as to render the proceedings void; that in any event it did not include and consequently did not affect the property of the defendants Reard; and that the creation of the district was of no benefit to any of the defendants or their property that would authorize their lands to be included in the proposed district.

The plaintiff recognizes that there is an error in the description of the boundaries of the proposed district in the trial court's judgment, both before and after an amendment made by that court, and seeks by cross-appeal to have that description corrected by this court in its trial de novo of the cause.

The sections of the statute prescribing the contents of the articles of association looking towards the formation of such a district and the filing of a petition with such articles in the district court, together with process to issue thereon to the several owners of real estate in

the proposed district who did not sign the articles of association but whose lands were alleged to be benefited thereby together with the presentation of objections thereto, are set out in sections 31-727 to 31-729, R. S. Supp., 1961. The contemplated hearing to be had in district court and its action in respect thereto are prescribed in section 31-730, R. R. S. 1943.

Questions concerning the propriety of the creation of the sanitary and improvement district in the act under consideration as well as those involving the inclusion or exclusion of the lands of the various owners who have filed objections as provided in section 31-729, R. S. Supp., 1961, being all before the trial court at the same time, it becomes apparent that the hearing before the trial court provided for in section 31-730, R. R. S. 1943, concerning the organization of sanitary and improvement districts is one in equity. This being an appeal in an action in equity, it is the duty of this court to try the issues of fact complained of de novo and to reach an independent conclusion without reference to the findings of the district court. See, § 25-1925, R. R. S. 1943; Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293.

Both the plaintiff and defendants urge this court to retry the issues but for entirely different reasons. The defendants contend there is no sufficient description of the limits of the proposed district in the judgment of the trial court or in the bill of exceptions and consequently there was none before the trial court at the hearing before it nor before this court at this time, and the proceeding should be dismissed. They also urge their particular land should be excluded. The plaintiff on the other hand urges that the evidence before us is sufficient to correct the description in the judgment of the trial court which he concedes is defective. In his cross-appeal the plaintiff requests that this correction be made by this court.

A question of what is before us immediately arises because the original articles of association attached to

and filed in district court with the petition of the plaintiff, a copy of which appears in the transcript, were never introduced in evidence and consequently were not made a part of the bill of exceptions. The reports are so replete with the opinions of this court to the effect that generally speaking only the evidence contained in the bill of exceptions may be considered by this court on appeal that no citation of authority to that effect is necessary. Unless there is an exception in the cause before us arising by reason of the provisions of the particular statute under consideration and because of the recitations in the judgment of the trial court indicating they were considered by it, the articles of association cannot now be considered by this court. Without the articles of association it must be conceded there is no description before us either of the proposed limits of the district or the premises of the individual owners included therein as required and provided by section 31-727, R. S. Supp., 1961, except the description of the limits in the plaintiff's petition which is conceded to be erroneous. That the trial court considered the articles of association as evidence before it in making its decision is apparent from the recitations in its judgment. It specifically recites it was considered by the court and contains references to it in several instances including a finding that the articles were duly executed by a majority of the owners of the real estate involved, and that the landowners who were benefited by the formation of the district but who did not sign the articles of association were properly served with process. These findings could not be made from other evidence in the bill of exceptions. The statute under which the proposed district is sought to be established herein, sections 31-727 to 31-766, R. R. S. 1943, as amended, provides a special proceeding. It provides that the original signed articles of association be filed in court with the petition.

To dismiss the proceeding because these articles were not formally introduced in evidence when the transcript

shows they were duly filed and the judgment of the trial court shows they were considered by it, would result in a failure to determine the merits of the cause either by the trial court or this court in an equitable proceeding under a statute designed to benefit and improve real property and ameliorate the sanitary conditions therein. Such a result would be repugnant to the general rules of equity. "Where a court of equity has obtained jurisdiction of a case for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." Corn Belt Products Co. v. Mullins, 172 Neb. 561, 110 N. W. 2d 845. See, also, 30 C. J. S., Equity, § 67, p. 414.

To remand this cause for retrial because the articles were not introduced in evidence when they are before us in the transcript and were considered by the trial court would appear a circuitous and useless procedure if a proper decision is possible by considering them as evidence along with the bill of exceptions at this time. It may here be said that the defendants do not appear to specifically object to the fact that the articles are not in evidence although they do assert that there was no sufficient description of the boundaries of the district before the trial court. This however seems to refer to the fact that the limits of the proposed district were also not properly described in the original articles of association. We hold that where the original articles of association prescribed by section 31-727, R. S. Supp., 1961, are duly filed with the clerk of the trial court and shown in the transcript in this court, and the journal of the trial court shows they were considered by it as being in evidence and no specific objection is raised because of their not being admitted in evidence, they may be considered as if made a part of the bill of exceptions.

It now becomes necessary to determine whether from the whole proceedings the proper boundaries of the

district can be ascertained by this court. Only confusion would result by including in this opinion the various long and erroneous descriptions of the boundaries of the proposed district set out by metes and bounds in the record.

A plat or sketch of the area in which this district was to be formed was received in evidence. It was admitted for purpose of reference only so that location might be made of the various descriptions of the boundaries of the district and the real estate holdings of the signers of the articles of association and of those whose land was included therein but who did not sign the articles. Objections were made by the defendants to its admission. These objections were not pointed out in the motion for new trial in the district court and cannot be considered by us on appeal.

Referring to the descriptions of the limits of the district as contained in the articles of association and the petition of the plaintiff to this plat, it becomes clear that the boundaries in both were confusing, ambiguous, and erroneous. The plaintiff moved to amend the description of the boundaries by deleting a certain portion thereof and substituting other recited metes and bounds in lieu thereof after the error was called to his attention by the motion of the Young Men's Christian Association, hereinafter mentioned. The court granted the motion and entered its order accordingly, but after effecting the substitution for that which was deleted, it did not conclude with the remainder of the description. This resulted in the metes and bounds of the description never closing at the east end thereof. This was discovered by the plaintiff after judgment and he moved to have the description corrected nunc pro tunc, which motion the court granted and the amendment was made, but this description as corrected is also erroneous. The plaintiff in this brief on cross-appeal again suggests that which he states is the correct description to be applied by this court on trial de novo herein. It is ob-

vious from the record that the description presently suggested in the brief is again ambiguous and erroneous in that one of the calls purports to go west when it should go east.

The several errors in the description all relate to a certain area which is not included within the various descriptions of the boundaries of the district. The tract which the plaintiff contends was intended to be included within the limits of the district by the articles of association and by the trial court but which was omitted by reason of the several alleged errors after carefully considering the evidence is found to be the south 300 feet of the east 630 feet of the proposed district although the area is platted and divided into blocks and lots which are shown on exhibit No. 2 together with the public roads or streets therein.

A consideration of the evidence including the articles of association is quite convincing that the tract was intended to be included in the district by the signers of the articles and the trial court, and the area should have been so included under the evidence. There are several reasons that impel us to this conclusion.

Section 31-727, R. S. Supp., 1961, contains the following description of the contents to be set forth in the articles of association for creating such a district: "For that purpose said majority of the owners may make and sign articles of association in which shall be stated (a) the name of the district, (b) that same shall have perpetual existence, (c) the limits of the district, (d) the names and places of residence of the owners of the land in the proposed district, (e) the description of the several tracts of land situated in the district owned by those who may organize the district, (f) the name or names and the description of the real estate owned by such owners as do not join in the organization of the district, but who will be benefited thereby, * * *."

Article IV of the articles of association gives not only the names and places of residence of all the resident own-

ers of land in the proposed district as prescribed in that part of the above-quoted section designated as (d), but opposite the names and residences appears a description of the land owned by each. The names, addresses, and descriptions of land owned by all those in the disputed tract mentioned are there given.

Article V thereof states that all the owners of land mentioned in Article IV have signed the articles of association except those listed in Article VI.

Article VI purports to give the names, addresses, and descriptions of all the real estate owned by each owner who has not joined in the organization of the district but who will be benefited thereby. All of the owners of real estate in the omitted tract who have not signed the articles of association are there given. In two instances, however, including that of the defendants Reard, their real estate in the area is not described as fully in Article VI as in Article IV. The variances in the descriptions in the two articles are not deemed fatal as the descriptions of their several properties in the area not included within the boundaries do appear correctly in Article IV. All of the property in the intended district is set out in Article IV or included in the boundaries of the district described. All of those who did not sign the articles were served with process as shown by the judgment of the trial court. The articles as a whole show their land was to be included. In the case of the Reards, they appeared, answered, took part in the trial and testified, and their property and the extent thereof was quite fully gone into by them.

It appears likewise that upon consideration of the erroneous descriptions of the boundaries of the district, that the area was intended to be and should be included. Without giving the full description of the limits of the district as set out in the petition and articles of the association which is of great length, it may be of some assistance to state that by a long series of calls involving directions, distances, and points along the boundary of

the district, the metes and bounds described lead from the place of beginning to the southwest corner of Lot 2, Block 75, of the Village of Benson. The said southwest corner of Lot 2 is also the northwest corner of Lot 9 in the same block and immediately to the south thereof. This lot is 300 feet long north and south. The remainder of the description from that point proceeds as follows:

"thence south along *the west line of Lot 9, Block 75 to the southwest corner of said Lot; thence east along the north lot lines of Lots 9 and 10, Block 75,* and Lots 6, 7, 8, 9 and 10, Block 70, to the center line of vacated *73rd Street; thence north 450 feet along said center line; thence east 630 feet to the east lot line of Lot 1, Block 67; thence north 510 feet to the place of beginning.*" (Italics supplied.)

It will be observed that after going south to the southwest corner of said Lot 9, the line described proceeds east along the north line of said lot and other lots having the same north line without ever having previously returned north again.

It should here be stated that the west line of the portion of the premises omitted from the boundaries of the district and in question here is the center of vacated Seventy-third Street. Further that the southwest corner of the omitted tract lies 150 feet north of the intersection at the center of vacated Seventy-third Street with the north line of Lot 9 of Block 75 and the extended line formed by the north line of the other lots mentioned in the description quoted. The same southwest corner of the tract in question is 450 feet north of the south line of said Lot 9 thus extended eastward. Further, the northwest corner of the area so excluded from the boundaries of the area is 450 feet north of the north line of said same lot.

The area so excluded is rectangular and we have hitherto referred to it herein as the south 300 feet of the east 630 feet of the proposed district. After going

north 450 feet from the point of intersection with the centerline of vacated Seventy-third Street, the description given purports to proceed 630 feet east to the east line of Lot 1 of Block 67 and from there north 510 feet to the place of beginning. This description is ambiguous because in going 630 feet east, the line intersects the east line of Lot 10 in Block 66, lying north and across Bedford Avenue from Lot 1, Block 67. It is further ambiguous in that the point of beginning is not 510 feet north of said line but only 210 feet north. The place of beginning is really 510 feet north of the southeast corner of the tract and not the northeast corner thereof.

The Young Men's Christian Association appeared and alleged it owned Lots 9 and 10 of Block 75, being the premises east of the call in the description which went south on the west line of Lot 9 and never returned north. It filed a motion stating it was informed and believed its land would be encompassed by said district and moved that the petition be made more definite and certain so it might be informed whether its premises were to be included. The motion was confessed and an amendment made but the only change in the description was to delete the call which went south on the west line of said Lot 9.

It seems clear from the several descriptions of the boundaries of the district that at some time in the negotiations leading to the preparation and signing of the articles of association, it was intended to include certain lots extending 300 feet south of the boundary as finally fixed and agreed upon and that those lots adjoined the center of vacated Seventy-third Street on the west. It is evident that in preparing the articles and petition, the description was not fully corrected. It should have gone north on vacated Seventy-third Street 150 feet rather than 450 feet.

Both from the descriptions of the premises of the individual owners in the articles and from a consideration of the errors in the recited boundaries of the district, it

appears the excluded area was intended to be and should have been within the boundaries of the district. The trial court is given power by section 31-730, R. R. S. 1943, to exclude or include lands in the district under the conditions therein set out. Of necessity this includes the power to adjust and determine the limits of the district.

Section 25-853, R. R. S. 1943, provides: "The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Section 25-852, R. R. S. 1943, with respect to amendments, states in part: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

Such amendments have been made by this court on appeal in an equitable proceeding tried de novo. See Pitman v. Henkens, 125 Neb. 621, 251 N. W. 282. Like amendments of judgments may be made on trial de novo on appeal. See 5 C. J. S., Appeal & Error, § 1520, p. 981.

In the present cause, the articles of association contained the premises here sought to be included within the boundaries of the district although the limits described did not contain them. Such defects may be corrected by this court herein.

The plaintiff offered evidence in support of the formation of the district which will be summarized here. One Marshall D. Becker, an attorney, testified that he had gone to the office of the register of deeds and checked

the titles of real estate in the district and had ascertained the names and addresses of the owners immediately before filing the articles of association, and the names and addresses of the persons having an interest in the real estate were shown on records at that time. It appears from the articles of association that a majority of the owners joined in the execution thereof.

Other witnesses testified as to the need of sanitation and improvement in the district. It appears from the evidence as it is related to exhibit No. 2, that the district extends from Seventy-second Street on the east to Seventy-eighth Street on the west. The two streets are connected by Bedford Avenue which runs east and west approximately through the center of the proposed district and crosses intervening streets. Testimony of owners in the district living on Bedford Avenue showed it was not paved and that it was muddy when wet and there was a cloud of dust when dry. There were open ditches along its sides which were not cleaned by the public authorities after rains. This was attributed by the witness to the lack of interest by the city of Omaha or the county because the district was within 3 miles of the city. The owners themselves were forced to clean them after rains when they were in a "mess." The water in the ditches at times would be 1½ feet deep. The road itself was rough and shook cars badly when dry. The street was described as little better than a cow path being filled with holes and ruts. One witness said that he had to enter his premises from a downhill position when the street was muddy. The owners had put sand on the street but it was washed away by rains. Chains or mud tires were required in wet weather. Bedford Avenue was well lined with homes on the south side from Seventy-sixth to Seventy-second Streets but there were no sidewalks. There were some homes and some vacant lots on the north. School buses run through the neighborhood and on one occasion because of the mud a school bus had slipped off the road into the ditch at

the side and the children had to walk home through the mud.

There were no sewers in the area of the district and the homes had septic tanks. Some residents had septic tank problems as the tanks overflowed and backed up. The overflow contributed to the presence of rats, gophers, and moles, resulting in conditions which were not sanitary.

There was testimony that there was an interceptor sewer on Seventy-second Street on the east which extended ½ block west of that street into the district. This street was well-traveled with a bus line thereon. The desire to see paving and sewers installed was testified to by the plaintiff's witnesses.

The defendant Wilfred Ahlman testified that he resides at 7420 Bedford Avenue with his mother, sister, and two brothers. He acquired title to the property on which they live in 1945 and they have lived there since 1947. When he came back from the service in 1945, the area was rural in character. There were orchards in the area and the Ahlmans still have an orchard. He stated that if the sanitary and improvement district were established, the property would be benefited from the standpoint of sanitary improvements but in his personal opinion it would not be benefited because the land would lose its rural character which was their reason for moving there.

Irma Ahlman, his mother, likewise testified to their moving there when there were only three houses in the area because they wanted some privacy. They have their own plumbing system which works well. If the improvements were made, no one would be benefited because the street would be a racetrack that would result in injury to children playing thereon. Her direct testimony ended as follows: "Q. And you feel the property will not benefit if the Court establishes this district? A. I do not know. I won't be able to pay for it so I don't want it. Q. And it is therefore your

desire to be excluded therefrom? A. Yes, sir." On cross-examination appear these questions and answers: "Q. I know you don't want it in, but the question is whether or not if they were put in, that would enhance your property, wouldn't it be a benefit to the property, truthfully now? A. Well, it might in some ways. Q. In what ways? A. Well, for the benefit maybe of people that wanted to race down there and things like that. Q. Not as far as the property itself is concerned? A. As far as I am concerned, I am going to keep the ground and I don't want it."

The defendant Clarence F. Reard testified he lives at 7215 Bedford Avenue and has lived there since 1946. He owns 5 acres on the south side of Bedford Avenue and 3 acres on the north thereof, all of which he states was contemplated as being within the district. The 8 acres are devoted to agriculture and livestock. He raises mink and Shetland ponies, from which livestock he receives his principal source of income, it being 90 percent of his living. Reard has thereon 37 ponies in sheds and pens and 225 old mink from which young are raised and sold. On direct examination these questions were asked of him to which he gave the following answers: "Q. Do you feel that your property would not be benefited by the formation of the district? A. There would be benefit to the property but not to me. Q. In other words, this will cause you a loss? A. At the present time it would cause me a loss. Q. How do you feel that the property would be benefited if the Court should establish a sanitary district. A. My property would be benefited but only on the basis of making me more money if I sell it. Q. Will your property benefit or won't it—you have stated both. A. It won't." On cross-examination he further stated: "Q. You feel then that if streets are put in there that is going to cause you to discontinue the pony business there? A. Well, yes, it would, in time. Q. Eventually? A. Yes. Q. But insofar as the value of the lots is concerned,

as lots, streets and sewers will benefit the value as lots. A. Yes. Q. It won't help your pony business any, though? A. No."

· The statute before us, sections 31-727 to 31-729, R. S. Supp., 1961, together with section 31-730, R. R. S. 1943, providing for the hearing on the proffered objections by landowners, has never been construed by this court. It is, however, quite similar to the proceedings governing drainage districts to be organized in district court under sections 31-301 to 31-304, R. R. S. 1943. In the case of Petersen v. Thurston, 157 Neb. 833, 62 N. W. 2d 68, it was held that the objectors may object to the organization of the district only on the ground that their land would not be benefited by drainage and should not be included. It was further held that the burden was upon the objectors to satisfy the court that their lands should not be included. We think the same rule should apply here and that in the hearing provided for under section 31-730, R. R. S. 1943, where the owner of lands included in the proposed district seeks to have such lands excluded on the ground that they will not be benefited, the burden is on the landowner to satisfy the court that they will not be benefited.

This burden has not been met and a preponderance of the evidence justifies the conclusion that the creation of the district would benefit the lands in the proposed district and the inclusion of the defendants' land therein would result in a benefit also.

The last portion of the description of the boundary of the district shown in the original judgment of the trial court according to the transcript herein reads as follows: "thence east along the South line of Lots 5, 4, 3, 2 and 1, Block 75, *across 75th Street, and continuing along the South lines of Lots 5, 4, 3, 2, and 1, Block 75,* across 75th Street, and continuing along the South lines of Lots 5, 4, 3, 2, and 1, Block 70, to the center line of vacated 73rd Street." (Italics supplied.) The italicized portion shown therein is a repetition. The whole of the

last portion quoted or so much thereof as appears in the judgment should be deleted from the judgment of the trial court and the amendments made nunc pro tunc by the trial court should be vacated, and the following should be added to the description in the original judgment in lieu of the last portion deleted: "thence east along the South line of Lots 5, 4, 3, 2 and 1, Block 75, across 75th Street, and continuing along the south lines of Lots 5, 4, 3, 2 and 1, Block 70, to the center line of vacated 73rd Street, thence north 150 feet along said center line; thence east 630 feet to the east line of Lot 1, Block 67; thence north 510 feet to the place of beginning."

As so amended the original judgment encompasses the correct boundaries of the proposed district. As so modified the original judgment should be and is affirmed.

AFFIRMED AS MODIFIED.