IN RE PETITION OF SANITARY AND IMPROVEMENT DISTRICT NO. 1 OF GOSPER COUNTY (AND DAWSON COUNTY), NEBRASKA. EVALD AND MARY LOU ABRAMSON ET AL., APPELLEES, v. COSMO CLUB ET AL., APPELLANTS.

708 N.W.2d 809

Filed January 13, 2006.    No. S-05-533.

Steve Windrum for appellants.

Robert J. Huck, Martin P. Pelster, and David J. Skalka, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## I. NATURE OF CASE

Owners of real property around Johnson Lake associated to form a sanitary and improvement district (SID) under Neb. Rev. Stat. § 31-727 (Reissue 1998) for the purpose of installing a sewer or water system. After notifying real property owners within the proposed district and obtaining signatures on the articles of association, the petitioners asked the district court to establish the proposed SID. Some residents (referred to herein as "the objectors") filed objections to the formation of the SID. The district court found that the petitioners had satisfied the statutory requirements for forming an SID and granted the petitioners' request. The objectors appealed.

## II. SCOPE OF REVIEW

The hearing before a trial court provided for in Neb. Rev. Stat. § 31-730 (Reissue 2004) concerning the organization of sanitary and improvement districts is one in equity. See *Zwink v. Ahlman*, 177 Neb. 15, 128 N.W.2d 121 (1964). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003); Neb. Rev. Stat. § 25-1925 (Reissue 1995).

## III. FACTS

Johnson Lake is a recreational lake and residential community located between Lexington and Elwood, Nebraska. Parts of Johnson Lake are located in both Gosper and Dawson Counties. The lake serves the irrigation, power, and recreational needs of the area. Central Nebraska Public Power and Irrigation District (Central) owns and operates Johnson Lake, the supply canals that enter and exit the lake, all the shoreline, and nearly all the property adjacent to the lake. The majority of residential homes, weekend and seasonal cabins, and businesses around the lake are located on land owned by Central; the principal exceptions are three residential areas located along the lake's northwest shoreline, which contain 227 privately owned lots.

As of February 2002, a total of 920 residential lots, 28 active businesses, and 2 recreational areas maintained by Nebraska's Game and Parks Commission made up the Johnson Lake community. Nearly all of the residences, cabins, businesses, and Game and Parks Commission facilities have their own septic tanks and absorption fields for waste disposal.

Estimates indicate that as many as 5,200 people are at the lake on holiday weekends during the summer. The Game and Parks Commission has estimated that as many as 43,250 campers use its sites during the year and that 196,150 " 'day-use visitors' " frequent the lake every year. Because of increased occupancy and development, wastewater volumes are increasing yearly at Johnson Lake. This increase has created wastewater treatment and disposal problems. Since 1998, some of the septic systems of Central's lessees have failed and cannot be

repaired or replaced because the systems cannot comply with state setback regulations.

Setback requirements for septic systems and water wells are regulated by the Department of Environmental Quality (DEQ) and the Department of Health and Human Services (DHHS). The record indicates that more than half of the existing septic systems around Johnson Lake do not comply with state setback requirements. Septic systems generally have a lifespan of 20 to 40 years, and when owners attempt to repair or replace failed systems, install new water wells, or build new structures on their property, the setback requirements are enforced by state agencies. DHHS has delayed issuing administrative compliance orders because of efforts in the community to achieve a long-term solution through the establishment of a sanitary sewer system.

DEQ monitors water quality in Nebraska. It has found fecal coliform (i.e., bacteria found in human and animal waste) in the water of Johnson Lake at levels exceeding DEQ's water quality standards. Based on data collected between 2001 and 2003, DEQ designated Johnson Lake an impaired water body under the federal Clean Water Act in 2004 due to excessive fecal coliform. The record indicates that waste from septic systems has contributed to this contamination.

In 2001, area residents asked Central to commission a study to determine the severity of the wastewater problem and to recommend possible solutions to the problem. A feasibility study was completed in February 2002 by a civil engineering consulting firm specializing in water and sewer design. The firm concluded that "on-site treatment systems such as septic tanks and drain fields can no longer be relied upon as being adequate treatment systems at Johnson Lake" and that "present and future conditions at Johnson Lake will require other collection and treatment technologies." The "construct[ion of] a centralized collection and treatment system to serve all of the lots and residents at Johnson Lake" was recommended.

Based on research and a poll taken of area property owners and lessees, concerned residents determined that an SID would be the best governing vehicle to facilitate the development and operation of a centralized wastewater system. Thereafter, many of the residents associated themselves for the purpose of forming

an SID under the provisions of Neb. Rev. Stat. §§ 31-727 to 31-780 (Reissue 1998 & Supp. 2003) and adopted articles of association. Signatories to the articles filed a petition in the Gosper County District Court asking that SID No. 1 of Gosper County (and Dawson County), Nebraska, be formed. According to the articles, the purposes of the district would be to "acquire, install, repair, maintain, renew, reconstruct, and replace a sanitary sewer system, disposal plants, [and] a water system; and to provide for collection and disposal of waste and sewage in a satisfactory manner." The proposed SID encompassed all the property abutting Johnson Lake situated between the lake and the centerline of the paved road surrounding the lake. Some persons holding land within the proposed SID opposed its formation and filed objections.

The district court found that the petitioners had fulfilled all the requirements for forming an SID; thus, SID No. 1 of Gosper County (and Dawson County), Nebraska, was established. Various objectors filed a motion for new trial, which the district court overruled. The objectors appealed, and this court moved the case from the docket of the Nebraska Court of Appeals to its own docket.

## IV. ASSIGNMENTS OF ERROR

The objectors claim, renumbered and rephrased, that the district court erred in (1) determining that it had personal jurisdiction over the proceedings; (2) determining that the petitioners had satisfied the requirements of § 31-727 for the formation of an SID; (3) finding that the establishment of the SID was conducive to the public health, convenience, or welfare; (4) appointing the five nominated trustees for the SID; (5) determining that the petitioners established a prima facie case on their petition at the hearing thereon under § 31-730; (6) determining that their objections were insufficient to prevent the establishment of the SID under § 31-729; and (7) overruling their motion for a new trial.

## V. ANALYSIS

### 1. PERSONAL JURISDICTION

The objectors claim the district court lacked personal jurisdiction over the proceedings because the petitioners allegedly

failed to properly serve notice of the proceedings to many owners of real estate within the proposed SID. Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions. *Diversified Telecom Servs. v. Clevinger*, 268 Neb. 388, 683 N.W.2d 338 (2004). We reject the objectors' argument for the following reasons.

The objectors assert that "numerous" certified mail return-of-service receipts indicate that service of process was insufficiently made. See brief for appellants at 12. However, their brief does not allege that the service of process on any objector was defective. They offer three examples of return-of-service receipts allegedly demonstrating improper service, but it is unclear whether the examples in fact represent defective service of process. Nevertheless, none of the examples involved the objectors.

The objectors cannot assert a claim based on defective service to other parties. In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Cornhusker Pub. Power Dist. v. City of Schuyler*, 269 Neb. 972, 699 N.W.2d 352 (2005). Cf. *Bailey v. Mahr*, 199 Neb. 29, 255 N.W.2d 866 (1977) (defendants, whose sole interest in partition proceeding concerned two tracts, who were properly served, who filed voluntary appearance, and over whom district court had competent jurisdiction, had no standing to challenge sufficiency of service by publication as to unknown defendants in connection with another tract and failed to demonstrate how they might have been prejudiced by alleged error in service by publication).

The objectors also claim that the petitioners' attempted service by publication failed to notify "[n]umerous" persons or entities with an interest in the action. See brief for appellants at 11. In order to set aside a judgment or order based on service by publication, a party must affirmatively assert a lack of actual notice. *Pilot Investment Group v. Hofarth*, 250 Neb. 475, 550 N.W.2d 27 (1996). The objectors fail to provide any examples of parties who received no actual notice; thus, we reject the objectors' argument concerning service by publication.

In addition, the objectors have waived their personal jurisdiction argument based on defective service of process because they participated in the proceedings beyond objecting to the

sufficiency of process. Under Neb. Rev. Stat. § 25-516.01 (Cum. Supp. 2004), if a defense of "lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process" is asserted

> either by motion or in a responsive pleading and the court overrules the defense, an objection that the court erred in its ruling on any issue, except the objection that the party is not amenable to process issued by a court of this state, will be waived and not preserved for appellate review if the party asserting the defense thereafter participates in proceedings on any issue other than those defenses.

Therefore, the objectors have waived their personal jurisdiction objection.

### 2. REQUIREMENTS OF § 31-727

Section 31-727 sets forth the requirements for the formation of an SID. The objectors claim the district court erred in determining that the petitioners satisfied these requirements. We address their arguments below and conclude that the district court did not err in determining that the petitioners satisfied the § 31-727 requirements.

### (a) Majority of Owners Requirement

In order for an SID to be established, a "majority of the owners having an interest in the real property within the limits of a proposed . . . district" must support its formation by signing the articles of association. See § 31-727(1). The objectors claim that the petitioners failed to satisfy § 31-727 because less than a "majority of the owners" signed the articles. Thus, we must address whether § 31-727 requires a majority of the owners *by name* or a majority of the owners *by area*.

The record in this case indicates that Central owns a majority of the real estate in the proposed SID. With the exception of three residential areas that contain 227 privately owned lots, Central owns the greatest number of lots around Johnson Lake used for residences, seasonal cabins, and businesses. The objectors contend that Central should be counted only once as an owner in support of the SID, whereas the petitioners contend that Central should be counted in proportion to the amount of real estate it owns within the proposed district.

■ The meaning of a statute is a question of law. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004). We conclude that the phrase "majority of the owners" in § 31-727(1) refers to owners representing a majority of the area of real estate within the district.

■ In order to ascertain the proper meaning of a statute, reference may be had to later as well as earlier legislation upon the same subject. *Cox Nebraska Telecom v. Qwest Corp., supra.* A collection of statutes in pari materia may be considered and construed together to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. See *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998).

Considering other SID provisions, we find that under § 31-740.01, trustees may amend the articles of association unless "the owners representing a majority of the front footage of real estate within the district" oppose the amendment. Under § 31-767, trustees may dissolve an SID unless "the owners representing a majority of the area of real estate within the district" object. Under § 31-769, trustees may detach property from an SID unless "the owners representing a majority of the area of real estate within the district" object.

■ When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). Section 31-727 was "designed to benefit and improve real property and ameliorate the sanitary conditions" in the proposed district. *Zwink v. Ahlman*, 177 Neb. 15, 20, 128 N.W.2d 121, 124 (1964). If this court were to construe the phrase "majority of the owners" in the manner advocated by the objectors, owners representing only a small fraction of the affected area could defeat the will of the owners representing the majority of the area who wished to address pressing sanitary needs. Such an interpretation of § 31-727(1) would defeat the purpose of the SID statutes.

To establish other types of improvement districts, both in this state and elsewhere, proponents are usually required to obtain the approval of a substantial percentage of landowners by area.

For example, the formation of an irrigation district requires the approval of property owners or leaseholders representing a majority of the acreage within the proposed district. Neb. Rev. Stat. § 46-103 (Reissue 2004). Public utility districts may be created by petition if consent is given by the owners of a majority of the front footage of real estate within the proposed district. Neb. Rev. Stat. § 18-407 (Reissue 1997). Petitions to establish drainage districts ordinarily must be signed by landowners representing a substantial portion of property within the area that will be affected by the improvement. 25 Am. Jur. 2d *Drains and Drainage Districts* § 8 (2004).

SID-formation proceedings are proceedings in equity. See *Zwink v. Ahlman, supra.* Equity is best served by a requirement that a majority of the owners by area must sign the articles of association. By signing the articles, "the owners of real estate so forming the district for such purposes . . . obligate themselves to pay the tax or taxes which may be levied against all the property in the district and special assessments against the real property benefited which may be assessed against them to pay" for the installation of a sewer or water system. § 31-727(2). SIDs are authorized to levy "a tax on the taxable value of the taxable property in the district" sufficient to pay interest on borrowed money and to make repairs to the sewer or water system. § 31-739(1).

The district court correctly noted that Central is not exempt or relieved in part from paying its share of the costs of improvements in the SID. Central, like all other benefited property owners in the district, will be taxed by the SID on the taxable value of its property. See § 31-739. To interpret the "majority of the owners" requirement in § 31-727(1) differently would lead to an inequitable result: Central, as the owner of a majority of the taxable real estate in the proposed SID, would receive less than a one-half-percent vote in forming it.

Therefore, we hold that under § 31-727(1), owners representing a majority of the area within a proposed SID must sign the articles of association. Based on our de novo review of the record, it is clear the petitioners established that owners representing a majority of the area within the proposed SID voted to form the district.

(b) Identification of Persons, Parties, Lands, and
Lots Within Proposed SID

Under § 31-727(1)(a) and (f), petitioners must identify the owners of real property within the proposed SID to establish that a majority of the owners support its formation. The objectors claim the petitioners failed to properly identify all persons, parties, lands, and lots within the proposed SID. Neither the SID statutes nor relevant case law specify the manner in which the identity of owners is to be established. Petitioners seeking to form an SID must establish by a preponderance of the evidence that a majority of owners within the proposed SID have joined in the effort to form the SID. Cf. *Zwink v. Ahlman*, 177 Neb. 15, 128 N.W.2d 121 (1964) (concluding preponderance of evidence demonstrated that creation of SID would benefit land in proposed district). We conclude the petitioners satisfied the requirements of § 31-727 regarding the identification of real property owners.

We have determined the petitioners established that a majority of the owners within the district voted to form the SID. This determination leaves unnecessary a detailed discussion of the objectors' claim regarding the identification of real property owners within the district, so we summarize below our review of the record concerning this issue.

The objectors claim that attorney-certified title reports offered by the petitioners did not prove the title and ownership of real estate within the SID because (1) they did not explain how the described lands related to land embraced within the SID and (2) the preparers of such reports made errors when the reports were assembled. These are evidentiary arguments. To preserve a claimed error in the admission of evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). At trial, the objectors expressly waived any foundation and hearsay objections to the title report exhibits, and they raised no other objections to these exhibits. Consequently, the objectors have not preserved their ability to contest the title reports before this court.

The objectors also argue that several exhibits admitted at trial demonstrate that the petitioners either added names of persons

who did not own property within the district or omitted names of some who did. Our de novo review of the record reveals that the objectors' arguments are without merit, and we summarize our findings here.

In several instances, the objectors point to one piece of evidence by itself and claim it demonstrates that the petitioners either added an improper name or omitted a proper name. However, the petitioners showed the identity of owners through a combination of evidence, including legal descriptions and maps of the district, title searches, and testimony at trial. From such evidence and the signature pages attached to the articles of association, the petitioners compiled a list of owners who supported the SID and another list of owners who did not support it. We conclude that the petitioners satisfactorily identified the owners within the district.

Several of the objectors' arguments concern property that had been transferred from one owner to another. For example, Central's signature page and an accompanying document from the register of deeds identified certain property within the district not owned by Central. The objectors point out that these documents refer to two owners whose names were not included in either of the petitioners' lists of owners. The record indicates that the property in question was included in the title reports offered by the petitioners, but the property was recorded under a different name because the property had been transferred to another owner. The new owner signed the articles of association.

The objectors challenge the validity of several names on the signature pages attached to the articles of association. We reject these claims. Some of the objectors' claims are based on the false premise that all the names of persons who signed as owners were in fact counted by the petitioners in their final tally of owners; they were not. Furthermore, some of the signatory names contested by the objectors did not appear on older title search reports, but the names did appear on more current title search reports.

The objectors argue that a number of signers to the articles of association failed to include the date of signing and, thus, the petitioners failed to meet their burden of proof to identify real property owners within the district. We reject this argument because § 31-727 contains no requirement that the signature of

each owner supporting the SID be accompanied by a date. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005).

The record shows that a substantial majority of owners on Johnson Lake associated to form the SID. The district court found that even if the alleged omissions or additions were proved to be meritorious (which they were not) and the corrections were made as requested by the objectors, the petitioners would still have a majority of the owners. We agree. We have reviewed the record before us de novo, and we conclude the district court correctly found that the petitioners had adequately identified the owners within the district pursuant to § 31-727.

### (c) Requirement That Trustees Be Owners of Real Estate Within Proposed District

The objectors claim the petitioners failed to designate five or more trustees who are "owners of real estate located in the proposed district," as required by § 31-727(3). The objectors' argument is without merit.

"Initial trustees of a sanitary and improvement district must own real estate within the proposed district." *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 621, 386 N.W.2d 433, 435 (1986). See §§ 31-727(3) and 31-730. In the present case, the objectors argue that the five trustees selected were unqualified because they owned only an undivided two-fifths interest in a nonresidential lot within the district. The trustees had been granted their ownership interest as joint tenants by a warranty deed in July 2003. This transfer was made so as to ensure that the proposed trustees met the statutory qualification of ownership.

No particular amount of land or percentage of interest in such land is required by the SID statutes. The district court correctly noted that

[u]nder Nebraska law an undivided interest in real property is ownership in fee and the owner of such an interest is seized of the ". . . whole estate; he has an undivided [share of the whole] estate rather than the whole of an undivided share." *Hein v. W.T. Rawleigh Co.*, 167 Neb. 176, 190[, 92 N.W.2d 185, 193] (1958). [Section 31-727(3)] does not

require that any of the owners own any particular quantum of fee ownership, but instead they must be "owners of real estate located in the proposed district."

The objectors also take issue with the fact that the lot in which the trustees are interested has no structures or improvements on it other than a septic system. Section 31-727(3) does not require that the trustees own *developed* real estate within the district—only that they own "real estate." The record does not indicate that the trustees' qualifying interest was a sham or was obtained fraudulently. Therefore, we affirm the district court's finding that the petitioners satisfied their burden under § 31-727(3) to propose trustees who were "owners of real estate located in the proposed district." See *id.*

### 3. CONDUCIVE TO PUBLIC HEALTH, CONVENIENCE, OR WELFARE

Section 31-730 authorizes the district court to establish an SID if the court determines that "the formation of such district will be conducive to the public health, convenience, or welfare." The objectors claim the district court erred in finding that the establishment of the SID would meet this requirement. They argue that the alleged benefit to be derived from the SID is based on speculation and conjecture. We conclude the district court did not err in finding the petitioners had proved by the greater weight of the evidence that the SID would be conducive to the public health, convenience, or welfare of the Johnson Lake community.

The record indicates that the water in Johnson Lake has been polluted with fecal coliform. As a result, lake users have faced an increased risk of contracting diseases or viruses. DEQ has declared Johnson Lake an impaired water body. Waste from septic systems has contributed to the contamination.

Heavy use of the Johnson Lake area by permanent residents and seasonal and recreational users has created wastewater treatment and disposal problems. More than half of the existing septic systems around Johnson Lake are out of compliance with state setback requirements, which have been implemented in the interest of public health to ensure that waste materials do not seep into water wells and surface water. Civil engineers specializing in

sewer and water matters have concluded that septic systems can no longer be relied upon to provide adequate wastewater treatment at Johnson Lake.

The objectors further argue that the proposed SID does not meet the "public health, convenience, or welfare" criterion because less expensive alternatives exist to address the Johnson Lake waste system needs. See § 31-730. The SID statutes do not require the petitioners to prove that the formation of an SID to install a sanitary sewer system is the only, the cheapest, or even the best means of tackling their waste system problems. Under § 31-730, petitioners must show only that the SID will benefit the public health, convenience, or welfare.

#### 4. REMAINING ASSIGNMENTS OF ERROR

The objectors did not provide argument for their remaining assignments of error. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998). Therefore, we do not consider the additional assignments of error.

### VI. CONCLUSION

This court has reviewed de novo the record, and we conclude that the district court did not err in finding that it had personal jurisdiction, the petitioners satisfied the statutory requirements to form an SID, and the SID would be conducive to the public health, convenience, or welfare. Therefore, we affirm the district court's establishment of SID No. 1 of Gosper County (and Dawson County), Nebraska.

AFFIRMED.