STATE OF NEBRASKA, EX REL. CHARLES HAMMOND, V. F. N. DIMOND ET AL.

FILED MARCH 5, 1895.   No. 7500.

1. Villages : INCORPORATION.   The provision of section 40, chapter 14, Compiled Statutes, for the incorporation of villages, " Whenever a majority of the taxable inhabitants of any town or village not heretofore incorporated under the laws of this state shall present a petition to the county board," etc., applies to villages in the ordinary and popular sense of the term, and was not intended to clothe large rural districts with extended municipal powers, or subject them to special taxation for purposes to which they are in nowise adapted.

2. ——: ——: OUTSIDE TERRITORY.   Lands adjacent to a town or village may be incorporated therewith, provided they are in such close proximity thereto as to be suburban in character and have some unity of interest with the platted portion in the maintenance of municipal government.   But the statute does not contemplate the incorporation of remote territory having no natural connection with the village and no adaptability to municipal purposes. (State v. Village of Minnetonka, 59 N. W. Rep. [Minn.], 972.)

3. ———: ———: DETACHMENT OF TERRITORY. The provision of section 101, chapter 14, Compiled Statutes, for the disconnecting of territory from a city or village by petition, *is available only to legal voters of the territory sought to be detached.*

4. ———: ———: QUO WARRANTO: PARTIES. The owner of agricultural lands illegally included within the boundaries of a city or village who is not a voter therein, may maintain proceedings by *quo warranto* for the purpose of determining the validity of the act of incorporation.

5. ———: ———: USER. The effect of a continued user of corporate powers in such a case not presented by the record and not determined.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

*D. F. Osgood,* for plaintiff in error.

*Morning & Berge, contra.*

POST, J.

This was a proceeding in the nature of a writ of *quo warranto* in the district court for Lancaster county. The object of the proceeding was to test the legality of the alleged incorporation of the city, formerly the village, of College View, in said county. A general demurrer to the petition was sustained, and final judgment having been entered thereon, the cause was removed into this court for review upon the petition in error of the relator. The only question presented being the sufficiency of the petition to entitle the relator to relief, it is deemed proper to here copy it at length, omitting caption and conclusion, viz. :

" 1. The relator is the owner of the northwest quarter of the southeast quarter of section six (6), township nine (9) north, of range seven (7) east, in Lancaster county, Nebraska, and has been the owner of said land ever since the 15th day of February, 1887, which has ever since said time been farm land and used as such.

" 2. The defendants, F. N. Dimond, C. W. Nicola, Joseph

Sutherland, J. A. Childs, L. F. Soucey, F. A. De Wolf and Josephus Hobbs, representing and acting as mayor and council for the defendant, the city of College View, are without authority of law exercising and usurping the rights and duties of mayor and council of the city of College View, county of Lancaster and state of Nebraska, and are passing ordinances and levying taxes without legal authority therefor.

"3. Your relator alleges the fact to be that there is no such incorporated city or municipality as the city of College View.

"4. Your relator alleges that the following tract or parcel of land in section 5, township 9 north, of range 7 east, to-wit, the southwest quarter and the south half of the southeast quarter and the north half of the southeast quarter of section 5, township 9, range 7 east, Lancaster county, Nebraska, was platted as College View; that afterwards, to-wit, on the 25th day of April, 1892, two-thirds of the residents of the platted tract of College View and the other land hereafter described, presented to the county commissioners of Lancaster county, Nebraska, a petition for the incorporation of the village of College View, but said petition described the territory intended to be incorporated in said village, which was as follows: the west one-half of sections 4 and 9, all of sections 5 and 8, and the east one-half of sections 6 and 7 in township 9 north, of range 7 east, of the 6th principal meridian, Lancaster county, Nebraska, containing four sections of land, which include the land above described owned by your relator, together with about 2,240 acres of other land, which was used for farming purposes and was not platted as an addition or subdivison, nor were there any residents upon the land above described owned by your relator, nor was there land platted or occupied for one half mile or more between the above described land of your relator and of the platted land or tract named College View. And the said commissioners of Lancaster county, Nebraska, acting without authority of law, did, on

the 28th day of April, 1892, pretend to incorporate the village of College View, including within the metes and bounds in said pretended incorporation the land of your relator above described, as well as about 2,240 acres of land not platted or subdivided, but being farm land.   Such action of the county commissioners was without authority of law and illegal, and was without any notice to your relator, nor did he have any knowledge of the said pretended incorporation and the alleged corporation of the municipality of College View until about the month of April, 1894, when your relator applied to pay his taxes on the above described land to the county treasurer of Lancaster county, Nebraska, when he was informed by said county treasurer that there was the sum of $15 corporation tax against said land levied by the alleged corporation or municipality of the city of College View."

The petition will be more readily understood from the following map of the six sections therein named, the shaded parts being the relator's premises in section 6, and the platted portion of the village, to-wit, the south half of section 5.   The boundaries of the village as incorporated are shown by the dark lines extending through sections 6 and 7 and 4 and 9:

It is boldly asserted that there exists no authority by virtue of statute or otherwise in the state for the inclusion within the boundaries of a city or village of a large tract of rural territory having no natural connection therewith and which, as in this case, is in nowise adapted to city or village purposes. A subject of such recognized importance, it might be supposed, has been definitely settled by judicial opinion in the absence of positive statute; but an examination of the cases proves that the precise question has seldom been presented for determination by the courts. The incorporation of cities of the second class and villages is regulated by the provisions of section 40, chapter 14, Compiled Statutes, which reads as follows: "Any town or village containing not less than two hundred nor more than fifteen hundred inhabitants, now incorporated as a city, town, or village, under the laws of this state, or that shall hereafter become organized pursuant to the provisions of this act, and any city of the second class which shall have adopted village government as provided by law, shall be a village and shall have the rights, powers, and immunities hereinafter granted, and none other, and shall be governed by the provisions of this subdivision. * * * *Provided further*, That whenever a majority of the taxable inhabitants of any town or village, not heretofore incorporated under any law of this state, shall present a petition to the county board of the county in which said petitioners reside, praying that they may be incorporated as a village, designating the name they wish to assume, and the metes and bounds of the proposed village, and if such county board or a majority of the members thereof shall be satisfied that a majority of the taxable inhabitants of the proposed village have signed such petition, and that inhabitants to the number of two hundred or more are actual residents of the territory described in the petition, the said board shall declare the said proposed village incorporated, entering the order of incorporation upon their records, and designating

the metes and bounds thereof; and thereafter the said village shall be governed by the provisions of this act applicable to the government of villages. And the said county board shall, at the time of the incorporation of said village, appoint five persons having the qualifications provided in section forty-two of this act, as trustees, who shall hold their offices and perform all the duties required of them by law until the election and qualification of their successors at the time and in the manner provided in this act."

In *State v. McReynolds*, 61 Mo., 203, the following statute was presented for construction: "Whenever two-thirds of the inhabitants of any town or village within this state shall present a petition to the county court of the county setting forth the metes and bounds of their village *and commons* and praying that they may be incorporated * * * the county court may declare such town or village incorporated, designating in such order the metes and bounds thereof; and thenceforth the inhabitants within such bounds shall be a body politic and corporate," etc. The foregoing, omitting for the present any reference to the words in italics, is not essentially different from ours. It was held, first, that the act contemplated the incorporation only of towns, villages, and their commons; second, that no authority was conferred upon the court to incorporate a farming community not a part of a town or village or the common belonging thereto; third, that the term commons, as used in the statute, meant lands included in or belonging to the town or village and set apart for public use; fourth, that where the order of incorporation includes a large tract of farming lands it is without jurisdiction and void, that the officers of the town or village have no authority to act even within the proper limits thereof, and that they may be proceeded against by *quo warranto*. The extent of the territory in that case was 1,200 acres, of which 900 acres was farming land and about 300 acres was included in the town and additions thereto.

But perhaps the most satisfactory exposition of the subject is to be found in a recent opinion of the supreme court of Minnesota in *State v. Village of Minnetonka*, 59 N. W. Rep., 972. The act therein involved is the following: "Any district, sections, or parts of sections, which has been platted into lots and blocks, also the lands adjacent thereto, * * * said territory containing a resident population of not less than 175, may be incorporated as a village." The court, in awarding a judgment of ouster, declare the evident purpose thereof to be "the incorporation of villages in the ordinary and popular sense, and not to clothe large rural districts with extended municipal powers or to subject them to special municipal taxation for purposes for which they are wholly unsuited." It is also said: "The law evidently contemplates as a fundamental condition to a village organization a compact center or nucleus of population or platted lands; and in view of the expressed purposes of the act, it is also clear that by the term 'lands adjacent thereto' is meant only those lands lying so near and in such close proximity to the platted portion as to be suburban in their character, and to have some unity of interest with the platted portion, in the maintenance of a village government. It was never designed that remote territory having no natural connection with the village, and no adaptability to village purposes should be included." Similar views are also expressed in *Vestal v. City of Little Rock*, 54 Ark., 321, and *People v. Bennett*, 29 Mich., 541.

It is true the territory sought to be incorporated (*supra*, in *State v. Village of Minnetonka*), some thirty-five sections, is largely in excess of that included within the boundaries of the village herein named; but we are, notwithstanding that fact, unable to perceive that the case cited differs in principle from the one before us. For, assuming the soundness of the respondents' argument, the only limitation upon the liability of rural property for the burdens of municipal government in this state is the discretion of the

State v. Dimond.

county board in a strictly *ex parte* proceeding. It has been argued against the rule recognized in the cases cited that it is wanting in precision, and that it merely substitutes the discretion of one class of officers for that of another. But that criticism is, it seems, entirely unmerited. The rule therein applied is not only a reasonable one, but furnishes a safe and logical test for the ascertainment of the powers of the various officers and tribunals with respect to the boundaries of towns and villages. We do not doubt the unlimited power of the legislature in the absence of constitutional restriction, with respect to the boundaries of municipal corporations. (See 1 Dillon, Municipal Corporations [4th ed.], sec. 183; 2 Beach, Public Corporations, sec. 1400.) The question involved, however, is not one of constitutional, but of statutory construction, and the conclusion reached is believed to be the one most in harmony with the spirit of the act and which best accords with judicial utterance on the subject.

But an examination of the subject is necessarily incomplete which omits a reference to another aspect thereof, viz., that suggested by *South Platte Land Co. v. Buffalo County*, 15 Neb., 605, *McClay v. City of Lincoln*, 32 Neb., 412, and *Lancaster County v. Rush*, 35 Neb., 120. It was therein held that an action will not lie to enjoin the collection of taxes levied upon agricultural property within the boundaries of a city or village, or for the recovery of such taxes paid under protest. The validity of the incorporation, although apparently presented by the argument in each case, was not decided, the court holding that it could not be questioned in a collateral proceeding. In *South Platte Land Co. v. Buffalo County* it is said: "There is no doubt the owners of land not platted may object to such land being included within the boundaries of the corporation, and in a proper proceeding for that purpose may have it excluded. * * * We do not decide that the occupants of a town can by petition take in territory in

15

which they have no interest and attach it to a town." It is said also: "The petition for incorporation gave the commissioners jurisdiction, * * * and their action cannot be attacked in this collateral manner." The views herein expressed are not only consistent with the doctrine of those cases, but a careful reading of them suggests the conclusion which we have reached.

There remains to be considered the question of the appropriateness of the remedy by *quo warranto*. We were at first strongly impressed with the belief that the relator had an adequate remedy under the special provision of the statute (sec. 101, ch. 14, Comp. Stat.) for the disconnecting of territory from a city or village; but a closer inspection proves that it applies only to legal voters of the territory sought to be detached. The owner of property, therefore, who, as the relator in this case, resides outside the limits of such city or village, is not within the provisions of the statute, and must seek relief by means of a different proceeding; and the cases above cited leave no room to doubt that his remedy is by a direct proceeding for the purpose of determining the validity of the act of incorporation. But the effect of a continued user of corporate powers and functions by the village and afterwards by the city of College View, as suggested on the argument, is not presented by the demurrer, and we must not be understood as expressing any opinion on that subject. It may be that the rights of the respondents as officers of the city, within the actual limits thereof and over such unplatted territory as is attached thereto, with the knowledge and consent of the owners, should not be questioned at this time. The judgment will, therefore, be reversed and the cause remanded with directions to allow the respondents, on proper terms, to answer if they so elect and to proceed to judgment on the merits of the cause.

REVERSED AND REMANDED.