STATE OF NEBRASKA EX REL. ROGER M. LITTLE ET AL., APPELLANTS, V. BOARD OF COUNTY COMMISSIONERS OF CHERRY COUNTY, NEBRASKA, ET AL., APPELLEES.

155 N. W. 2d 351

Filed December 29, 1967. No. 36626.

John C. Coupland and Nelson, Harding, Acklie, Leonard & Tate, for appellants.

Spittler & O'Kief, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from the denial of a writ of mandamus to require the county board of Cherry County to form the Village of Valentine Motel, pursuant to section 17-201, R. R. S. 1943. An appeal from an order dismissing the petition in error for review of the order of the county board denying incorporation of the Village of Valentine Motel is to be found at 179 Neb. 655, 140 N. W. 2d 1.

Appellants list 11 assignments of error, but the sole question presented by the appeal is whether the district court erred in finding that the jurisdictional requirements of the act relating to incorporation of a village had not been met.

Section 17-201, R. R. S. 1943, previous to the 1961 amendment, is as follows: "Any town or village containing not less than one hundred nor more than one thousand inhabitants, incorporated as a city, town or village, under the laws of this state, and any city of the second class that shall have adopted village government as provided by law, shall be a village, and shall have the rights, powers, and immunities hereinafter granted, and none other; Provided, all county seat towns shall have the powers and immunities as hereinafter granted. *Whenever a majority of the taxable inhabitants of any town or village, not incorporated under any laws of this*

*state*, shall present a petition to the county board of the county in which said petitioners reside, praying that they may be incorporated as a village, designating the name they wish to assume, and the metes and bounds of the proposed village, and such county board or majority of the members thereof shall be satisfied that a majority of the taxable inhabitants of the proposed village have signed such petition, and that inhabitants to the number of one hundred or more are actual residents of the territory described in the petition, the board shall declare the proposed village incorporated, and enter the order of incorporation upon its records, and designate the metes and bounds thereof. Thereafter the said village shall be governed by the provisions of law applicable to the government of villages. The county board shall, at the time of the incorporation of said village, appoint five persons, having the qualifications provided in section 17-203, as trustees, who shall hold their offices and perform all the duties required of them by law until the election and qualification of their successors at the time and in the manner provided in sections 17-202 and 17-601." (Italics supplied.)

Appellants' petition was filed with the county clerk December 30, 1961, at 10 o'clock p.m. For the purposes of this appeal, appellees concede that the petition was filed before December 31, 1961, the exception provided by the 1961 amendment to section 17-201, R. R. S. 1943, so that the 1961 amendment is not involved herein.

The area embraced in the petition is a 7-acre tract bordering the southeast city limits of Valentine on the east. On the date of the filing of the petition, and at the time of the hearing herein, the entire tract was owned by The Valentine Motel, Inc., a Nebraska corporation, which was organized to operate a motel and trailer park. All stock in the corporation was owned by Alice T. Little, wife of the relator Roger M. Little.

On December 1, 1961, the only structures located on the property were a wellhouse and two mobile homes,

one owned by relator Roger M. Little and one by the corporation. Water mains, sewer lines, and a sewage lift station were installed, as well as an underground electrical installation, underground telephone lines, and coaxial cable for television. The sewer facilities were an extension of the facilities of the city of Valentine. Lots were laid out for 33 mobile homes. During the month of December 1961, several mobile homes were moved onto the premises. The record indicates that in most instances the mobile homes were moved from other trailer parks at the expense of the corporation, and with the agreement that no rent would be charged for the space occupied by the mobile unit until April 1, 1962. At the time of the hearing before the county board of Cherry County, most of the mobile homes were still on their wheels. There was no business activity of any nature in the area other than the operation of a trailer park.

The petitions purporting to be signed by 57 claimed residents alleged that the signers were a majority of the taxable inhabitants of the territory described by the petition, and that there were more than 100 actual residents in said area. It is to be noted that the county board must be satisfied on three points: That the area is a town or village, not incorporated under the laws of this state; that a majority of the taxable inhabitants of the proposed village signed the petition; and that inhabitants to the number of 100 or more are actual residents of the area described in the petition. While the statute provides that a majority of the board shall be satisfied, it must be understood that if the requirements have been met the board cannot arbitrarily determine otherwise.

Here, each member of the county board made a personal inspection of the area before the hearing by the board on January 9, 1962, and from that inspection and the evidence, denied the petition because the area was not a village and did not contain 100 actual inhabitants as of December 30, 1961.

Appellants argue that a village is a creation of the

Legislature; that the Legislature sets the standards for incorporation of a village; and that the only requirements are two: 100 or more actual residents, and a majority who desire incorporation.

It appears to us that the statute clearly presupposes the existence of a town or village. Otherwise, the italicized portion of the statute above would be mere surplusage. As early as 1895, in State ex rel. Hammond v. Dimond, 44 Neb. 154, 62 N. W. 498, this court, in construing essentially the same language in the then-existing statute, held it "applies to villages in the ordinary and popular sense of the term, * * *." It suggests a small urban community. This ordinarily means an assemblage of residences, less than a town or city, urban or semi-urban in character and having a density of population greater than usually found in rural areas.

As will be developed later, it is not necessary to define the term "village" more adequately herein. Suffice it to say that we believe it means more than a trailer park owned and operated as a business by a corporation.

Black's Law Dictionary (4th Ed.), p. 921, defines "inhabitant" as follows: "One who resides actually and permanently in a given place, and has his domicile there." We adopt this definition as applicable herein, and determine that there were not 100 inhabitants in the area sought to be incorporated on December 30, 1961.

The testimony of relator Roger M. Little would indicate 117 actual inhabitants at the time the petition was filed. This figure cannot be sustained from the record. Of those embraced in relator's figure of 117, the Gene Hofeldt family of five are included. They occupied a rented trailer which on December 30, 1961, was moved from another trailer park into the area. They left the area the next day, December 31, 1961. They certainly could not be considered inhabitants for any purpose. The Douglas Miller family of four were not inhabitants on December 30, 1961. Douglas Miller stayed at the Valentine Motel the evenings of December 30 and 31,

1961, without charge. The Valentine Motel adjoins the area sought to be incorporated, but actually is in the city of Valentine. On January 1, 1962, the Millers moved a mobile home into the area. They moved from the area April 6, 1962. No rent was charged for the period of their occupancy. The Eugene Vass family of three did not move a trailer into the area. Eugene Vass also stayed in the Valentine Motel December 30 and 31, 1961, without charge. Any rental agreement, if any, the Vass family may have had with the corporation was terminated January 5, 1962. The Harold R. Wescott family of eight also stayed in the Valentine Motel the evening of December 30, 1961, without charge. They were furnished an unoccupied trailer in the area sought to be incorporated on December 31, 1961, and moved their own trailer from Kilgore, Nebraska, January 4, 1962. While the Millers, Vasses, and Wescotts may have intended to reside in the area, they were not inhabitants as of December 30, 1961. There are others we feel who could not be considered inhabitants, but those enumerated are sufficient to show the inadequacy of the petition. We realize that residence is usually a matter of intent, but to be considered an inhabitant within the intent of section 17-201, R. R. S. 1943, the petitioners must actually and permanently reside in the area embraced in the petition.

We further observe that on December 30, 1961, the corporation had no written contracts with any of the claimed residents. Most of them paid no rent. They were on the property under an oral agreement that no rent would be due and payable until April 2, 1962. There is no evidence in this record which would indicate that any of these individuals were obligated to stay on the property thereafter. As a matter of fact, the Orville A. Morlang family of five moved into the area December 28, 1961, and moved off March 20, 1962. The Melford C. Osborne family of four moved onto the property December 18, 1961, and left on April 2, 1962. The Gordon Oakes family of four moved onto the property December 8, 1961,

and left on April 3, 1962. The Lawrence M. Schneider family of seven moved onto the property December 26, 1961, and left March 1, 1962. The Douglas Miller family of four referred to above left the property April 6, 1962. Of the 117 alleged inhabitants, 65 were not on the property 6 months later. It is plainly evident that many of the claimed residents were induced to temporarily reside in the area rent free in an attempt by the corporation to keep the area from being annexed by the city of Valentine. The writ of mandamus was properly denied.

There is no merit to the assignments of error urged by appellants. The judgment of the trial court is affirmed.

AFFIRMED.