763 N.W.2d 392 (2009)
277 Neb. 492
STATE of Nebraska ex rel. Glenn R. LANMAN and Teresa J. Lanman, appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF DAWSON COUNTY, Nebraska, et al., appellees, and
Sanitary and Improvement District No. 1 of Gosper County and Dawson County, Nebraska, intervenor-appellee.
No. S-07-1201.
Supreme Court of Nebraska.
April 3, 2009.
*395 Terry K. Barber and Joshua D. Barber, of Barber & Barber, P.C., L.L.O., Lincoln, for appellants.
Kurt R. McBride, Chief Deputy Dawson County Attorney, for appellees.
Robert J. Huck and David J. Skalka, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., Omaha, for intervenor-appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
The principal issue in this appeal is one of statutory interpretation. Neb.Rev.Stat. § 17-201 (Reissue 2007) permits the incorporation of a village upon the petition of "a majority of the taxable inhabitants of any town or village, not incorporated under any laws of this state." The issue presented here is whether this statute permits the incorporation of a village lying entirely within the boundaries of an existing sanitary and improvement district.

BACKGROUND
In 2003, a petition was filed in the district court for Gosper County seeking the formation of Sanitary and Improvement District No. 1 of Gosper County and Dawson County (SID No. 1) pursuant to Neb. Rev.Stat. §§ 31-727 to 31-793 (Reissue 1998 & Supp.2003). Several persons, including Glenn R. Lanman and Teresa J. Lanman, objected to the formation of the district, but their objections were overruled by the court. On February 10, 2005, the court entered an order granting the petition and declaring SID No. 1 to be "a public corporation of this state." The order stated that SID No. 1 would "encompass all of the property abutting Johnson Lake" and the "centerline of the paved road which surrounds the lake (Johnson Lake Drive)." In an appeal brought by the objectors, we affirmed this order.[1] Additional facts pertinent to the formation of SID No. 1 are set forth in that opinion. Briefly summarized, the area around Johnson Lake was experiencing increased problems with wastewater treatment and disposal, and concerned residents determined *396 that "an SID would be the best governing vehicle to facilitate the development and operation of a centralized wastewater system."[2]
After the issuance of our opinion affirming the formation of SID No. 1, the Lanmans and some of their neighbors who lived along Johnson Lake submitted a signed petition to the Board of County Commissioners of Dawson County (Board) seeking incorporation of "The Village of Johnson Lake" pursuant to § 17-201. The land described in the plat of the proposed village was situated entirely within the boundaries of SID No. 1. Acting on the advice of the Dawson County Attorney, the Board denied the petition because the proposed village was situated entirely within an already incorporated area. The Lanmans then commenced a mandamus action against the Board and the individual commissioners, alleging that upon receipt of the petition, they had a ministerial duty pursuant to § 17-201 to declare the village incorporated and declare its metes and bounds. SID No. 1 was granted leave to intervene and filed an answer in intervention in which it asserted various defenses, including an allegation that the proposed village could not be lawfully incorporated because it was entirely within the boundaries of SID No. 1, a municipal corporation.
Subsequently, the Board, the commissioners, and SID No. 1 filed a joint motion for summary judgment. After conducting an evidentiary hearing, the district court granted the motion. It reasoned that the Board's denial of the petition was correct as a matter of law because the petition failed to comply with the signature requirements of § 17-201 and because the village could not legally be incorporated within the boundaries of SID No. 1. The Lanmans filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

ASSIGNMENTS OF ERROR
The Lanmans assign, restated, consolidated, and renumbered, that the district court erred in (1) allowing SID No. 1 to intervene, (2) determining that a village may not be incorporated within the boundaries of a sanitary and improvement district, (3) determining that the petition seeking incorporation of the village did not meet the statutory requirements, and (4) sustaining the Board's objection to an exhibit at the evidentiary hearing.

STANDARD OF REVIEW
Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[5]
Statutory interpretation is a question of law, which an appellate court resolves *397 independently of the trial court.[6]

ANALYSIS

INTERVENTION
We first address the issue of whether the district court erred in giving SID No. 1 leave to intervene in the mandamus action. The Lanmans argue both that SID No. 1 lacked a direct and legal interest necessary for intervention and that the intervention was procedurally improper.
Intervention in Nebraska civil actions is generally governed by Neb.Rev. Stat. §§ 25-328 to 25-330 (Reissue 2008). Section 25-328 provides:
Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.
As a prerequisite to intervention under this statute, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action.[7] In determining whether such a direct and legal interest exists, it does not matter whether the interests are already adequately represented by another.[8] Whether a party has the right to intervene in a proceeding is a question of law.[9] SID No. 1 alleged the right to intervene because formation of the village would improperly detach and remove property from within SID No. 1's boundaries and tax base without compliance with the statutory requirements for detachment. For purposes of determining the right to intervene, we must assume that these allegations are true.[10] We conclude that SID No. 1 alleged interests sufficient to permit it to intervene in the mandamus action.
Procedurally, SID No. 1 sought leave to intervene by motion, which is inconsistent with the language in § 25-330 providing that "intervention shall be by complaint." Under a prior version of the statute requiring that intervention be by "petition," we treated a motion setting forth the claimed basis for intervention as a petition for intervention.[11] The motion filed by SID No. 1 set forth its claimed basis for intervening in the case, and after the motion was sustained, SID No. 1 filed an answer in intervention. This answer was a proper pleading, as SID No. 1 intervened on behalf of the respondents in resisting the claim seeking a writ of mandamus. We have stated that intervention *398 statutes are to be liberally construed.[12] Applying such construction here, we find no procedural bar to intervention and conclude that the district court did not err in granting SID No. 1 leave to intervene.

MANDAMUS
The Lanmans, as relators, sought a writ of mandamus compelling the Board to declare the incorporation of the village of Johnson Lake pursuant to their petition. Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law.[13] In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that such party is entitled to the particular remedy sought and that the respondent is legally obligated to act.[14]
Whether the Board had a legal obligation to act in this case must be determined from the language of § 17-201, which provides in relevant part:
Whenever a majority of the taxable inhabitants of any town or village, not incorporated under any laws of this state, shall present a petition to the county board of the county in which the petitioners reside, praying that they may be incorporated as a village and designating the name they wish to assume and the metes and bounds of the proposed village, and such county board or majority of the members thereof shall be satisfied that a majority of the taxable inhabitants of the proposed village have signed such petition and that inhabitants to the number of one hundred or more are actual residents of the territory described in the petition, the board shall declare the proposed village incorporated, enter the order of incorporation upon its records, and designate the metes and bounds thereof. Thereafter the village shall be governed by the provisions of law applicable to the government of villages.
(Emphasis supplied.) Assuming without deciding that the petition bore the requisite number of signatures, we focus on the question of whether the petitioners were "inhabitants of any town or village, not incorporated under any laws of this state."
We look first to the literal meaning of the statutory language, because in the absence of ambiguity, courts must give effect to statutes as they are written.[15] If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[16] Read literally, the language of § 17-201 would prohibit the incorporation of a village within any existing public corporation. Each Nebraska county is characterized by statute as "a body politic and *399 corporate."[17] A county is a political subdivision of the state which is "corporate in character."[18] Thus, under a literal reading of § 17-201, because a county itself is a corporate entity, none of its inhabitants could ever incorporate any area within its boundaries as a village. But this literal reading of the statute would lead to an absurd result, which we are bound to avoid if possible.[19] We therefore conclude that § 17-201 is ambiguous and open to construction.
Where statutory construction is called for, a court looks to the statute's purpose and then construes the statute in a reasonable manner that will best achieve that purpose, rather than interpreting the statute in a way that would defeat its purpose.[20] Section 17-201 presupposes the existence of a "village" in the ordinary and popular sense of the term, meaning a small urban community consisting of an assemblage of residences and having a density of population greater than usually found in rural areas.[21] The statute provides a means by which inhabitants of such a community may "incorporate" as a "village" in the narrower legal sense of the term in order to avail themselves of the provisions of § 17-201 and the other laws applicable to villages.[22] However, the statutory means to incorporate a village is limited by the phrase "not incorporated under any laws of this state."[23] We understand this phrase as referring to the territory situated within the boundaries of the proposed village, and we reject the Lanmans' argument that the phrase refers to the petitioning inhabitants. We have previously interpreted the statute as requiring that "the area is a town or village, not incorporated under the laws of this state."[24]
The verb "incorporate" means "[t]o form a legal corporation . . . ."[25] Thus, we read the term "incorporated" as used in § 17-201 to mean the formation of a public corporate entity comprising previously unincorporated territory. The dispositive issue is the scope of the next phrase, "under any laws of this state." The Lanmans argue that the phrase should be read narrowly to mean simply that taxable inhabitants of an unincorporated village may petition to incorporate as a village under § 17-201. The Board, the commissioners, and SID No. 1 argue that the phrase is more expansive and prohibits the incorporation of a village within the boundaries of any public or municipal corporation formed pursuant to Nebraska statutes.
Had the Legislature intended only that inhabitants of villages which had not been previously incorporated under § 17-201 could utilize the statute to incorporate, *400 it could have said so simply and directly. Indeed, it would have been unnecessary to include any limiting language, as there would be no reason for inhabitants of an already incorporated village to petition for incorporation. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[26] By using the broad language "under any laws of this state," the Legislature clearly intended that incorporation as a village was not permissible if the area of the proposed village had previously been incorporated under any Nebraska statute.
Sanitary and improvement districts are formed pursuant to § 31-727 et seq. The statutes provided that "[n]o lands included within any municipal corporation shall be included in any sanitary and improvement district"[27] and that upon formation, a sanitary and improvement district is declared by a court to be "a public corporation of this state"[28] and exists as a "body corporate and politic"[29] having
the power and authority to take and hold real and personal property necessary for its use, to make contracts, to sue and be sued, to have and use a corporate seal, and to exercise any and all other powers, as a corporation, necessary to carry out the purposes of sections 31-727 to 31-762.[30]
Based upon these statutes, this court has noted that a sanitary and improvement district "cannot be considered unincorporated."[31] We have also held that sanitary and improvement districts are municipal corporations within the meaning of statutes pertaining to payment of warrants.[32] We therefore conclude that a sanitary and improvement district is a public corporate entity within the boundaries of which a village may not be incorporated pursuant to § 17-201. Accordingly, the Board had no legal obligation to declare the existence of the proposed village of Johnson Lake, and the Lanmans were not entitled to a writ of mandamus.

REMAINING ASSIGNMENTS OF ERROR
Based upon our resolution of this question of law, we conclude that the district court did not err in entering summary judgment in favor of the Board, the commissioners, and SID No. 1. We do not reach the Lanmans' remaining assignments of error because an appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[33]

CONCLUSION
For the reasons discussed, we find no reversible error and affirm the judgment of the district court.
AFFIRMED.
GERRARD, J., participating on briefs.
NOTES
[1] In re Petition of SID No. 1, 270 Neb. 856, 708 N.W.2d 809 (2006).
[2] Id. at 859, 708 N.W.2d at 814.
[3] See Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[4] Thone v. Regional West Med. Ctr., 275 Neb. 238, 745 N.W.2d 898 (2008).
[5] Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008).
[6] Agena v. Lancaster Cty. Bd. of Equal., 276 Neb. 851, 758 N.W.2d 363 (2008); Niemoller v. City of Papillion, 276 Neb. 40, 752 N.W.2d 132 (2008).
[7] Spear T Ranch v. Knaub, 271 Neb. 578, 713 N.W.2d 489 (2006).
[8] See Ruzicka v. Ruzicka, 262 Neb. 824, 635 N.W.2d 528 (2001).
[9] Risor v. Nebraska Boiler, 274 Neb. 906, 744 N.W.2d 693 (2008); Spear T Ranch v. Knaub, supra note 7.
[10] See Spear T Ranch v. Knaub, supra note 7.
[11] In re Interest of Destiny S., 263 Neb. 255, 639 N.W.2d 400 (2002). See § 25-330 (Reissue 1995).
[12] Ruzicka v. Ruzicka, supra note 8.
[13] State ex rel. Johnson v. Gale, 273 Neb. 889, 734 N.W.2d 290 (2007); State ex rel. Upper Republican NRD v. District Judges, 273 Neb. 148, 728 N.W.2d 275 (2007).
[14] State ex rel. Stivrins v. Flowers, 273 Neb. 336, 729 N.W.2d 311 (2007).
[15] See, Goodyear Tire & Rubber Co. v. State, 275 Neb. 594, 748 N.W.2d 42 (2008); Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., 273 Neb. 133, 728 N.W.2d 560 (2007).
[16] Id.
[17] Neb.Rev.Stat. § 23-101 (Reissue 2007).
[18] Speer v. Kratzenstein, 143 Neb. 311, 313, 12 N.W.2d 360, 362 (1943).
[19] See, Livengood v. Nebraska State Patrol Ret. Sys., 273 Neb. 247, 729 N.W.2d 55 (2007); City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007).
[20] In re Application of City of North Platte, 257 Neb. 551, 599 N.W.2d 218 (1999).
[21] State ex rel. Little v. Board of County Commissioners, 182 Neb. 419, 155 N.W.2d 351 (1967). See State v. Dimond, 44 Neb. 154, 62 N.W. 498 (1895).
[22] See Neb.Rev.Stat. § 201.01 et seq. (Reissue 2007).
[23] § 17-201.
[24] State ex rel. Little v. Board of County Commissioners, supra note 21, 182 Neb. at 422, 155 N.W.2d at 353 (emphasis supplied).
[25] Black's Law Dictionary 781 (8th ed.2004).
[26] Niemoller v. City of Papillion, supra note 6; Zach v. Nebraska State Patrol, 273 Neb. 1, 727 N.W.2d 206 (2007).
[27] § 31-730. Accord § 31-761(3).
[28] § 31-730.
[29] § 31-732.
[30] Id.
[31] State ex. rel. Scherer v. Madison Cty. Comrs., 247 Neb. 384, 389, 527 N.W.2d 615, 619 (1995).
[32] S.I.D. No. 272 v. Marquardt, 233 Neb. 39, 443 N.W.2d 877 (1989); In re Application of S.I.D. No. 65, 219 Neb. 647, 365 N.W.2d 456 (1985).
[33] Cass Cty. Bank v. Dana Partnership, 275 Neb. 933, 750 N.W.2d 701 (2008).