766 N.W.2d 103 (2009)
277 Neb. 897
CONCRETE INDUSTRIES, INC., Appellant,
v.
NEBRASKA DEPARTMENT OF REVENUE, a Nebraska administrative agency, and Douglas Ewald, in his capacity as the State Tax Commissioner for the State of Nebraska, Appellees.
No. S-08-933.
Supreme Court of Nebraska.
June 5, 2009.
*105 Shannon L. Doering, for appellant.
Jon Bruning, Attorney General, and L. Jay Bartel, for appellees.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Under the Nebraska Revenue Act of 1967,[1] the purchase of manufacturing machinery and equipment is exempt from sales tax. Concrete Industries, Inc., the appellant, purchased parts that it used to build its own manufacturing machinery and equipment. The question presented in this appeal is whether the Nebraska Department of Revenue correctly found that Concrete Industries' purchases were not exempt from sales tax. We conclude that Concrete Industries' purchases of parts assembled into manufacturing machinery and equipment qualified as the purchases of manufacturing machinery and equipment, and were exempt from sales tax.

BACKGROUND
Under Nebraska law, sales and use taxes shall not be imposed on the gross receipts from the sale, lease, or rental in this state of manufacturing machinery and equipment.[2] Manufacturing machinery and equipment include several categories of machinery and equipment that are purchased, leased, or rented by a person engaged in the business of manufacturing for use in manufacturing.[3]
Concrete Industries is a Nebraska corporation engaged in the business of manufacturing. In 2007, Concrete Industries purchased a number of items used in the construction of a new Ready Mixed concrete plant in Auburn, Nebraska. The items ranged from specialized machinery and electrical parts to things as simple as *106 pipes, nuts, bolts, and wire. The items were apparently purchased separately, then assembled and configured into a "production line or other process" to "install and make operational" the new plant. In other words, instead of purchasing its manufacturing machinery and equipment preassembled, Concrete Industries bought the necessary parts and built the machinery and equipment itself. It does not appear to be disputed, for purposes of this appeal, that the machinery and equipment Concrete Industries built are of a kind that would have been exempt from sales tax had it been preassembled.
Concrete Industries filed a claim for overpayment of sales and use tax, requesting a refund of $1,279.05 that it alleged had been paid in sales tax on the items it bought to build its manufacturing machinery and equipment. The Nebraska Department of Revenue (Department) denied the claim, relying on revenue rulings in which the State Tax Commissioner opined that "purchases of raw materials or individual parts which will be used in the fabrication of manufacturing machinery and equipment where the fabricator is considered the final consumer of the machinery and equipment are taxable."[4]
Concrete Industries sought judicial review in the district court under the Administrative Procedure Act.[5] Concrete Industries argued, generally, that the Department had erred in its interpretation of the relevant statutes. Concrete Industries also alleged that the Department had violated the separation of powers principles of the state Constitution[6] and the Equal Protection Clauses of the state and federal Constitutions[7] in refusing to refund taxes paid on property the Legislature intended to be tax exempt. And Concrete Industries argued that the revenue rulings relied upon by the Department should be declared null and void because they exceeded the authority granted to the Department by the Legislature.
The district court rejected all of those arguments. The court concluded that the parts purchased by Concrete Industries were not "machinery or equipment" within the meaning of the relevant statutes. The court concluded that the revenue rulings relied upon by the Department, while they did not have the force of promulgated rules or regulations, nonetheless correctly stated the applicable law. And the court found a rational basis for the Department to exempt preassembled manufacturing machinery and equipment from sales tax and not extend that exemption to parts used to make machinery and equipment.
The court affirmed the Department's denial of Concrete Industries' refund claim. Concrete Industries appealed and filed a petition to bypass the Court of Appeals, which we granted.

ASSIGNMENTS OF ERROR
Concrete Industries assigns that the district court erred in concluding as follows:
(1) Machinery and equipment purchased as component parts and used to construct another piece of manufacturing machinery and equipment are not exempt from taxation pursuant to §§ 77-2701.47(1) and 77-2704.22(1);
*107 (2) The Department could appropriately rely upon revenue rulings 1-05-1 and 1-06-6 without violating the Administrative Procedure Act and the separation of powers principles of the Nebraska Constitution; and
(3) The Department's arbitrary construction of §§ 77-2704.22 and 77-2701.47 did not result in a violation of Concrete Industries' right to equal protection under the U.S. and Nebraska Constitutions.

STANDARD OF REVIEW
A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[8] But statutory interpretation presents a question of law,[9] and when reviewing a district court judgment for errors appearing on the record, an appellate court nonetheless has an obligation to resolve questions of law independently of the conclusion reached by the trial court.[10]

ANALYSIS
Concrete Industries' first assignment of error presents an issue of statutory interpretation. We are mindful of the proposition that tax exemption provisions are strictly construed, and their operation will not be extended by construction.[11] Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation.[12] But we are also mindful that in discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[13] This court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.[14] And we are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute.[15]
The general theory behind the sales and use taxes is to impose a tax on each item of property, unless specifically excluded, at some point in the chain of commerce.[16] If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies.[17] As relevant, the Nebraska Revenue Act of 1967 (hereinafter the Act) provides that "[s]ales and use taxes shall not be imposed on the gross receipts from the sale, lease, or rental and on the storage, use, or other consumption in this state of manufacturing machinery and equipment."[18]
*108 "Manufacturing" means an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property's being "reduced or transformed into a different state, quality, form, property, or thing."[19] And "[m]anufacturing machinery and equipment means any machinery or equipment purchased, leased, or rented by a person engaged in the business of manufacturing for use in manufacturing, including, but not limited to" one of eight categories of machinery and equipment articulated in § 77-2701.47(1). The term "manufacturing machinery and equipment" expressly includes "[a] repair or replacement part or accessory purchased for use in maintaining, repairing, or refurbishing machinery and equipment used in manufacturing."[20]
This exemption was enacted by the Legislature in 2005 for two primary reasons. The first reason was to try to provide smaller businesses with some of the tax advantages that had been conferred on larger businesses by the Employment and Investment Growth Act,[21] commonly known as L.B. 775.[22] The second reason was to eliminate some of the "double taxation" that occurred when sales or use taxes were charged for items that were then taxed again as tangible personal property subject to property taxes.[23]
Those purposes are not served by the Department's construction of the Act. First, property purchased for the assembly of manufacturing machinery and equipment would, at least potentially, be "qualified property" for purposes of recovering sales and use taxes under the Employment and Investment Growth Act.[24] And second, manufacturing machinery and equipment that is constructed from component parts would be double taxed if the "sale of ... manufacturing machinery and equipment" within the meaning of § 77-2704.22 did not include the sale of items used, by a manufacturer, to assemble machinery and equipment that would then be subject to property taxes.
We are not persuaded by the Department's argument that the "mold and die" amendment set forth in § 77-2701.47(1)(c) is pertinent to our analysis. That subsection provides that manufacturing machinery and equipment include "[m]olds and dies and the materials necessary to create molds and dies for use in manufacturing ... whether or not such molds or dies are permanent or temporary in nature ...."[25] The Department argues that specifically including the materials used to make molds and dies would not have been necessary had component parts used to make machinery and equipment generally been included. And, as the Department notes, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence *109 will be rejected as superfluous or meaningless.[26]
But the text of the mold-and-die amendment, and the legislative history of the bill in which it was separately adopted, make clear that its purpose did not relate to the issue presented here.[27] The problem was that some molds and dies are permanent in nature but that others are made from special raw ingredients and are essentially disposable.[28] The purpose of the mold-and-die provision was to ensure that all molds and dies were being treated the same, whether they were permanent or temporary.[29] That is not the issue here, so the mold-and-die amendment does not illuminate the Legislature's intent in enacting the provisions at issue in this case.
Nor are we persuaded by the Department's argument that § 77-2701.47(1)(h), which exempts repair or replacement parts or accessories, supports its interpretation of the Act. The Department contends that under Concrete Industries' reading of the Act, the repair or replacement part or accessory provision would be superfluous.
But there is a relevant distinction between purchasing components for the assembly of manufacturing machinery and equipment and purchasing repair or replacement parts or accessories for machinery and equipment that has already been assembled. The category of items excepted by § 77-2701.47(1)(h) is broader than the category of items used to construct machinery and equipment in the first place, because items that are not part of the construction of machinery or equipment may still be purchased "for use in maintaining, repairing, or refurbishing" it.
In other words, we are not persuaded that the Department's construction of the Act is necessary to prevent § 77-2701.47(1)(h) from being rendered meaningless. Instead, we agree with Concrete Industries that § 77-2701.47(1)(h) supports its construction of the Act. As previously noted, we must assume the Legislature intended a sensible rather than absurd result in enacting a statute.[30] And it would make very little sense to exempt assembled machinery from sales and use taxes, and to exempt each and every part of that machinery from sales and use taxes if it is purchased to replace an original part, but to impose a tax on the purchase of the same parts when they are purchased to assemble the machinery in the first place.
The Department also argues that its interpretation of the Act is supported by administrative concerns. The Department suggests that an exemption for preassembled machinery and equipment is easy to administer but that an exemption for parts used to make machinery and equipment would be hard to administer, because some of those parts could be very common, like some of the items involved in this case.
We are not persuaded by this argument. First of all, there is no indication in the legislative history that this was actually among the Legislature's concerns. It is the Legislature's intent, not the Department's, that is pertinent here.[31] Second, as Concrete Industries admits, the burden of establishing a tax exemption is placed *110 upon the party claiming the exemption.[32] Thus, the duty of determining whether a manufacturer's purchase of a common part was tax exempt will fall more on the manufacturer than on the Department.
But most fundamentally, the Department cannot escape the asserted administrative inconvenience of dealing with common parts, because, as already discussed, repair and replacement parts and accessories are tax exempt, even under the Department's interpretation of the Act.[33] Those repair and replacement parts and accessories could include any of the common items that are used to repair and maintain machinery and equipmentfrom complicated machine parts to nuts, bolts, wires, or machine oil. And, because almost any machinery and equipment will require routine maintenance and repair, the Department seems more likely to face those claims than circumstances in which a manufacturer constructs its own machinery and equipment from scratch.
In short, the Department is going to have to resolve refund claims for common parts in any event. We are not convinced that the Legislature intended to spare the Department that duty, because the same duty is imposed by the exemption for repair or replacement parts or accessories. The Department's claim of administrative convenience is not consistent with the Legislature's intent, as expressed in the legislative history and statutory language.
Most consumers are familiar with the ominous words "some assembly required." Those words do not mean that frustrated parents trying to assemble a bicycle on Christmas Eve have not purchased a bicyclethey have, regardless whether the bicycle's parts are assembled by a bicycle manufacturer, a toy store, or the final consumer. Similarly, a manufacturer has purchased manufacturing machinery and equipment regardless whether further assembly is required. Given the exemption's purpose, there is simply no relevant distinction between purchasing preassembled machinery or equipment, purchasing kits for assembling machinery or equipment, paying a vendor to purchase and assemble the parts, and purchasing one's own list of components to assemble into machinery and equipment. We decline to read such an irrelevant distinction into the statutes.
We hold that under §§ 77-2704.22(1) and 77-2701.47, the "sale ... of manufacturing machinery and equipment" includes the sale of items that are assembled to make manufacturing machinery and equipment. Therefore, we find merit to Concrete Industries' first assignment of error. Having determined that the Department's construction of the Act was incorrect, we need not consider whether the Department incorrectly relied on its own revenue rulings or whether the Department's interpretation of the Act was unconstitutional. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[34]
We also note that because the Department determined none of Concrete Industries' claims were valid, neither the Department nor the district court considered whether Concrete Industries met its burden of proving that all the items for which it claimed refunds were assembled into the manufacturing machinery and equipment that it built. For that reason, this cause will be remanded to the district court for *111 further proceedings to determine the amount of Concrete Industries' refund.

CONCLUSION
The sale of manufacturing machinery and equipment includes the sale of items that are assembled to make manufacturing machinery and equipment, which is therefore exempt from sales and use taxes under the Act. The Department, and district court, erred in concluding otherwise. The decision of the district court is reversed, and the cause remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WRIGHT, J., participating on briefs.
NOTES
[1] Neb.Rev.Stat. §§ 77-2701 to 77-27,135.01 and 77-27,228 to 77-27,236 (Reissue 2003 & Cum. Supp. 2006).
[2] See § 77-2704.22.
[3] See § 77-2701.47.
[4] Nebraska Department of Revenue Ruling 1-05-1 (Oct. 12, 2005). Accord Nebraska Department of Revenue Ruling 1-06-6 (Aug. 8, 2006).
[5] Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006).
[6] See Neb. Const. art. II, § 1.
[7] See, U.S. Const. amend XIV, § 1; Neb. Const. art. I.
[8] Becton, Dickinson & Co. v. Nebraska Dept. of Rev., 276 Neb. 640, 756 N.W.2d 280 (2008).
[9] Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008).
[10] Vlasic Foods International v. Lecuona, 260 Neb. 397, 618 N.W.2d 403 (2000).
[11] Goodyear Tire & Rubber Co. v. State, 275 Neb. 594, 748 N.W.2d 42 (2008).
[12] Id.
[13] See Vokal v. Nebraska Acct. & Disclosure Comm., 276 Neb. 988, 759 N.W.2d 75 (2009).
[14] Burns v. Nielsen, 273 Neb. 724, 732 N.W.2d 640 (2007).
[15] See Foster v. BryanLGH Med. Ctr. East, 272 Neb. 918, 725 N.W.2d 839 (2007).
[16] Lackawanna Leather Co. v. Nebraska Dept. of Rev., 259 Neb. 100, 608 N.W.2d 177 (2000).
[17] See id.
[18] § 77-2704.22(1).
[19] § 77-2701.46.
[20] § 77-2701.47(1)(h).
[21] Neb.Rev.Stat. §§ 77-4101 to 77-4112 (Reissue 2003 & Supp. 2007).
[22] See, Committee on Revenue, L.B. 695, 99th Leg., 1st Sess. 44-45 (Feb. 11, 2005); Floor Debate, L.B. 312, 99th Leg, 1st Sess. 5329-32 (May 9, 2005).
[23] See id. See, generally, Neb.Rev.Stat. § 77-201(5) (Cum. Supp. 2008); Pfizer Inc. v. Lancaster Cty. Bd. of Equal., 260 Neb. 265, 616 N.W.2d 326 (2000).
[24] See, generally, I.R.C. § 167 (2006); §§ 77-4103(13) and 77-4105; First Data Corp. v. State, 263 Neb. 344, 639 N.W.2d 898 (2002), overruled on other grounds, Strong v. Omaha Constr. Indus. Pension Plan, 270 Neb. 1, 701 N.W.2d 320 (2005).
[25] § 77-2701.47(1)(c).
[26] See State ex rel. Lanman v. Board of Cty. Commissioners, 277 Neb. 492, 763 N.W.2d 392 (2009).
[27] See Committee on Revenue, L.B. 1189, 99th Leg., 2d Sess. (Feb. 10, 2006).
[28] See id.
[29] See id.
[30] See Foster, supra note 15.
[31] See McClellan v. Board of Equal. of Douglas Cty., 275 Neb. 581, 748 N.W.2d 66 (2008).
[32] See Intralot, Inc. v. Nebraska Dept. of Rev., 276 Neb. 708, 757 N.W.2d 182 (2008).
[33] See § 77-2701.47(1)(h).
[34] McKenna v. Julian, 277 Neb. 522, 763 N.W.2d 384 (2009).